**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MARY DIFEDERICO, et al., | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | :    CIVIL ACTION NO. 8:11-CV-01508-RWT |
| | : |
| MARRIOTT INTERNATIONAL, INC., | : |
| | : |
| Defendant. | : |

**DEFENDANT MARRIOTT INTERNATIONAL, INC.'S MOTION TO DISMISS**
**PLAINTIFFS' AMENDED COMPLAINT**

Defendant Marriott International, Inc., ("Marriott"), by its undersigned counsel, hereby

respectfully moves, pursuant to Federal Rule of Civil Procedure 12(b)(3) and the common law

doctrine of *forum non conveniens*, for an Order dismissing all claims asserted herein by Plaintiffs

Mary DiFederico, Nicholas DiFederico, Erik DiFederico, and Greg DiFederico against Marriott.

For all of the reasons set forth in the accompanying Memorandum of Law, Marriott

respectfully requests that its Motion be granted.


COZEN O'CONNOR

BY:    */s/ Ronald F. Wick*
        Ronald F. Wick, Esquire
        Paul K. Leary, Jr., Esquire
        (admitted pro hac vice)
        1627 I Street, N.W., Suite 1100
        Washington, DC 20006-4007
        Telephone: (202) 912-4800
        Facsimile: (202) 912-4830

        *Attorneys for Defendant,*
        *Marriott International, Inc.*

Dated:  September 19, 2011

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MARY DIFEDERICO, et al., | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | :    CIVIL ACTION NO. 8:11-CV-01508-RWT |
| | : |
| MARRIOTT INTERNATIONAL, INC., | : |
| | : |
| Defendant. | : |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARRIOTT
INTERNATIONAL, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED
<u>COMPLAINT</u>**

COZEN O'CONNOR

BY:   *<u>/s/ Ronald F. Wick</u>*
       Ronald F. Wick, Esquire
       Paul K. Leary, Jr., Esquire
       (admitted pro hac vice)
       1627 I Street, N.W., Suite 1100
       Washington, DC 20006-4007
       Telephone: (202) 912-4800
       Facsimile: (202) 912-4830

       *Attorneys for Defendant,*
       *Marriott International, Inc.*

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ........................................................................ 1

II. PROCEDURAL AND FACTUAL BACKGROUND ...................................... 1

III. LEGAL ARGUMENT ..................................................................................... 4

    A. Standard ................................................................................................ 4

    B. Plaintiffs' Claims Should be Dismissed Pursuant to the Doctrine of
    Forum Non Conveniens – Fed. R. Civ. P. 12(b)(3) ................................. 5

        1. Standard of Review for a Motion to Dismiss on Forum
        Non Conveniens Grounds ........................................................... 5

        2. There is an Adequate and Alternative Forum ............................. 6

        3. Plaintiffs' Choice of Forum is Entitled to Little Deference ....... 8

        4. The Private Interest Factors ..................................................... 10

            a) Sources of Proof .......................................................... 10
            b) Witnesses Will be Unavailable and Costly if This
            Action Proceeds in This District ................................... 13
            c) Other Practical Problems ............................................. 15

        5. The Public Interest Factors Weigh in Favor of Dismissal ....... 16

            a) The Administrative Requirements of this Action
            Would Unduly Burden This Court's Already-Overloaded
            Docket .......................................................................... 16
            b) Pakistan has a Substantial Local Interest in Having a
            Controversy Arising out of a Terrorist Incident on its Soil
            Decided at Home .......................................................... 17
            c) Trial of a Diversity Case Which Arose in Pakistan Should
            Occur in Pakistan Because it is Familiar with the Foreign
            Law that Governs the Case ........................................... 19
            d) Avoidance of Unnecessary Problems in the Application of
            Pakistani Law ............................................................... 20
            e) Imposing Jury Duty on Citizens of This District for a
            Terrorist Attack in Pakistan Would Be Unfair ............. 22

IV. CONCLUSION ............................................................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

Baker v. Booz Allen Hamilton, Inc.,
  358Fed. Appx. 476, 2009 WL 5125672 (4th Cir. 2009)..........................................................21

Bartholomew v. Virginia Chiropractors Assoc.,
  612 F.2d 812 (4th Cir. 1979) ...............................................................................................5

Ben-Joseph v. Mt. Airy Auto Transporters, LLC,
  529 F. Supp. 2d 604 (D. Md. 2008).....................................................................................21

Blanco v. Banco Indus. de Venezuela, S.A.,
  997 F.2d 974 (2d Cir. 1993)..................................................................................................7

Chesley v. Union Carbide Corp.,
  927 F.2d 60 (2d Cir. 1991)....................................................................................................7

Colantonio v. Hilton,
  No. 03-1833, 2004 WL 1810291 (E.D. Pa. Aug. 13, 2004) ................................................8, 10

Cole-Tuve, Inc. v. American Machine Tools Corp.,
  342 F. Supp. 2d 362 (D. Md. 2004)........................................................................................9

Dicken v. U.S.,
  862 F. Supp. 91 (D. Md. 1994)............................................................................................19

Eastman Kodak Co. v. Kavlin,
  978 F. Supp. 1078 (S.D. Fla. 1997) .......................................................................................7

Erie Ins. Exch. v. Heffernan,
  925 A.2d 636 (Md. 2007) ....................................................................................................21

Grodinsky v. Fairchild Industries, Inc.,
  507 F. Supp. 1245 (D. Md. 1981)........................................................................................20

Gulf Oil Corp. v. Gilbert,
  330 U.S. 501 (1947)..................................................................................................... passim

In re Union Carbide,
  809 F.2d 195 (2d Cir. 1987)..................................................................................................7

Joanna SA v. Koninklijke Boskalis Westminster NV,
  569 F.3d 189 (4th Cir. 2009) ...........................................................................................6, 16

Jones v. Raytheon Aircraft Servs.,
    120 S.W.3d 40 (Tex. Ct. App. 2003) ........................................................................7

Karlitz v. Regent Int'l Hotels,
    No. 95-10136, 1997 U.S. Dist. LEXIS 2111 (S.D.N.Y. 1997)................................16

Klaxon Co. v. Stentor Elec. Mfg. Co.,
    313 U.S. 487 (1941)...............................................................................................20

Kortobi v. Kass,
    182 Md. App. 424, 957 A.2d 1128 (Md. App. 2008) .............................................20

Lab. Corp. of Am. v. Hood,
    911 A.2d 841 (Md. 2006) .......................................................................................20

Lockman Found. v. Evangelical Alliance Mission,
    930 F.2d 764 (9th Cir. 1991) ...................................................................................7

Lueck v. Sundstrand Corp.,
    236 F.3d 1137 (9th Cir. 2001) .................................................................................7

Lynch v. Vanderhoef Builders,
    237 F. Supp. 2d 615 (D. Md. 2002).................................................................9, 19

Millennium Inorganic Chemicals, Ltd. v. National Union,
    686 F. Supp. 2d 558 (D. Md. 2010).............................................................5, 10, 16

Pain v. United Technologies Corp.,
    637 F.2d 775 (D.C. Cir. 1980)...............................................................................16

Philip Morris Inc. v. Angeletti,
    752 A.2d 200 (Md. 2000) ......................................................................................20

Piper Aircraft Co. v. Reyno,
    454 U.S. 235 (1981)..............................................................................5, 6, 7, 8, 16

Ralph v. Long,
    2001 WL 706034 (D. Md. June 14, 2001)...............................................................9

Roman-Salgado v. Holder,
    730 F.Supp.2d 126 (D.D.C. 2010).........................................................................4

Rudisill v. Sheraton Copenhagen Corp.,
    817 F. Supp. 443 (D. Del. 1993)...........................................................................10

Silo Point II LLC v. Suffolk Construction Co., Inc.,
    578 F. Supp. 2d 807 (D. Md. 2008) ........................................................................4

Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,
  549 U.S. 422 (2007)............................................................................................8

Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.,
  471 F.3d 544 (4th Cir. 2006) ..............................................................................4

Sun Dun, Inc. of Washington v. Coca-Cola Co.,
  740 F. Supp. 381 (D. Md. 1990)..........................................................................5

Tang v. Synutr Int'l, Inc.,
  No. 09-0088, 2010 U.S. Dist. LEXIS 29868 (D. Md. Mar. 29, 2010) ........................ passim

Transunion Corp. v. PepsiCo, Inc.,
  811 F.2d 127 (2d Cir. 1987)................................................................................7

White v. King,
  244 Md. 348, 223 A.2d 763 (Md. 1966)..............................................................20

Wissam Abdullateff Sa'eed Al-Quraishi v. Adel Nakhla,
  728 F. Supp. 2d 702 (D. Md. 2010)..............................................................20, 21

Zinzler v. Marriott,
  605 F. Supp. 1499 (D. Md. 1985)........................................................................8

Zohar NIV v. Hilton Hotels Corp.,
  710 F. Supp. 2d 328 (S.D.N.Y. 2008)............................................................ passim

## STATUTES

Fatal Accidents Act of 1855 ....................................................................................6

Pakistan Hotels and Restaurants Act of 1976 ........................................................19

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(3) ..........................................................4, 5

Rule 12(b)(6)..........................................................................................................4

Defendant Marriott International, Inc., ("Marriott"), by its undersigned counsel, hereby submits this memorandum of law in support of its Motion to Dismiss Plaintiffs' Amended Complaint.

## I.      PRELIMINARY STATEMENT

On September 20, 2008, at 8 p.m. local time, a dump truck filled with 1300 pounds of explosives, including artillery shells, mortar bombs and accelerants rammed the anti-terrorist vehicle crash barrier at the Islamabad Marriott Hotel (the "Hotel") in Islamabad, Pakistan and detonated.  The blast created a crater 25 feet deep and 59 feet wide, blew out windows for several blocks, and ignited a fire that burned for two days.  56 people were killed and at least 266 injured.  Plaintiffs' decedent, Albert DiFederico, was a guest of the Hotel and a victim of the terrorist attack.

At issue here is Plaintiffs' attempt to hold Marriott, the franchisor, liable, under a boilerplate, premises liability negligence claim for what has been called the worst terrorist attack on an international hotel.  Plaintiffs seek to do so by litigating this matter in the District of Maryland.  Plaintiffs essentially contend that Marriott, who did not own, operate or manage the Hotel, somehow could have prevented a truck filled with TNT and other accelerant explosives from detonating at a 132-foot setback security gate protecting the Hotel.  The attack, allegedly carried out by Al-Qaeda or the Taliban, destroyed the entire Hotel.  Plaintiffs claim this terrorist attack was foreseeable and thus preventable.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

On June 2, 2011, Plaintiffs Mary DiFederico, Nicholas DiFederico, Erik DiFederico, and Greg DiFederico (referred to collectively as "Plaintiffs") initiated this action by filing a Complaint in the District of Maryland for wrongful death, survivorship, and vicarious liability arising out of the September 20, 2008, terrorist attack on the Islamabad Marriott Hotel.  On June

23, 2011, Plaintiffs filed an Amended Complaint naming the same parties and asserting claims of wrongful death, survivorship, and vicarious liability.  See Amended Complaint, attached hereto as Exhibit "A," at ¶¶ 36-51.

In the Amended Complaint, Plaintiffs properly recognized that Marriott was the franchisor of the Hotel, not the owner.  Id. at ¶ 7.  The Amended Complaint also replaced a gross negligence claim with one for vicarious liability and added a number of new details regarding alleged actions and inactions by the Hotel's security personnel.  In line with these new details, Plaintiffs modified their theory of liability against Marriott.  Plaintiffs claim that the level of terrorist activity in Islamabad and the western image of the Islamabad Marriott Hotel created a general environment by which any reasonable person would protect against further terrorist attacks.  Id. at ¶ 13.  Plaintiffs contend that Marriott was negligent in developing and carrying out its anti-terrorism plan and otherwise failing to protect Albert DiFederico.  Id. at ¶ 24.

Plaintiffs' Amended Complaint asserts specific details on the Hotel's security procedures and how Marriott's purported "personnel" (in Pakistan) deviated from mandatory security standards.  Id. at ¶¶ 16-24.  Plaintiffs claim that security personnel and others (including engineers) failed to respond appropriately when a truck containing 1,320 pounds of explosives impacted a security gate barrier.  Id. at ¶¶ 28-34.  Plaintiffs contend that a second explosion in the suicide bomber truck could have been averted if Hotel personnel acted promptly and if Marriott and its franchisee had taken appropriate responsive steps.  Id. at ¶ 35.

As acknowledged in Plaintiffs' Amended Complaint, the subject hotel is a franchised hotel owned and operated by Hashwani Hotels Limited ("Hashwani"), a public limited company organized under the laws of Pakistan, located at 88-Blue Area, Fazal-ul-Haq Road, G-7/F-7, Islamabad, Pakistan.  See Declaration of Alan Orlob, attached hereto as Exhibit "B," at ¶ 4. Hashwani is not a Marriott subsidiary, but a separate, independently operated Pakistani

company.  Id. at ¶ 5.  Marriott did have in place a general crisis management plan that it shared with managed and franchised hotels.  Id. at ¶ 6.  This plan established various threat conditions pursuant to recommendations from independent security services companies based in Hong Kong, London and the United States.  Id. at ¶ 7.  Marriott provides guidance to assist its franchised hotels with their respective local crisis management plans on a variety of issues, including civil disturbances, natural disasters and security measures to protect patrons.  Id. at ¶ 8. Marriott, however, relies exclusively on the owners of franchised hotels to implement specific security measures for the respective hotels.  Id. at ¶¶ 8-9.

The Hotel, not Marriott, retained its own security company.  See Exhibit "B," at ¶ 10. The Chief of Security for the Hotel is Major Tahir Qureshi and is lead by Colonel Zulficar.  Id. Hashwani was solely responsible for the creation and installation of a 132-foot setback security gate to protect the Hotel.  Id. at ¶ 11.  Hashwani was responsible for interviewing and hiring security personnel to protect the Hotel.  Id. at ¶ 12.  Hashwani independently implemented numerous security measures at the Hotel including the use of closed circuit television monitored 24 hours a day, the use of underground security cameras to inspect all incoming vehicles at the set-back gate, hiring of armed officials to patrol the property and the use of bomb sniffing dogs. Id. at ¶ 13.  All of these security measures were implemented by Hashwani to protect the Hotel from terrorist attacks.  Id. at ¶ 14.  Marriott did not hire or train any of the security personnel or any of the Hotel employees that responded to the terrorist attack.  Id. at ¶¶ 15-16.  Marriott did hire a third party auditor to perform random audits at franchised hotels to assess compliance with Marriott's crisis management plan.  Id. at ¶ 17.

This case involves a premeditated terrorist attack carried out via the use of a dump truck full of explosives.  According to local Pakistani and international news media accounts, the majority of injured people, both Hotel patrons, local security guards and street pedestrians, were

from Pakistan.[1]  This attack occurred on foreign soil, by international terrorists, at a hotel owned and operated by a Pakistani corporation.  Litigation of this matter will unquestionably require the testimony of many Pakistani citizens, including eyewitnesses, Hotel employees, Hotel management, contract security personnel protecting the Hotel, engineers, and numerous Pakistani governmental officials who investigated the attack.  Yet, despite the overwhelming material connections between this terrorist attack and Pakistan, as well as Plaintiffs' acknowledgment of Marriott's role as a franchisor, and Plaintiffs' primary contention that local security personnel failed to comply with Marriott's security procedures, Plaintiffs filed suit in the District of Maryland.  For the reasons described herein, Marriott respectfully requests that the Amended Complaint be dismissed.

## III.    LEGAL ARGUMENT

### A.    Standard

Under Federal Rule of Civil Procedure 12(b)(3), a case may be dismissed or transferred if the venue is improper or inconvenient in the chosen forum.  Fed. R. Civ. P. 12(b)(3).  Indeed, Rule 12(b)(3) is the proper mechanism for asserting that the action should be dismissed either for lack of proper venue or under the common law doctrine of *forum non conveniens*.  See Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947).[2]  In reviewing a motion to dismiss under Rule 12(b)(3), the court may "freely consider evidence outside the pleadings."  Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006).  In addition, when resolving a motion to dismiss under Rule 12(b)(3), the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis.  Silo Point II LLC v. Suffolk Construction Co., Inc., 578 F. Supp. 2d 807, 809 (D. Md. 2008).  While a court should draw all inferences in favor of the

---

[1] See News accounts of this attack, attached hereto as Exhibit "C."
[2] Should the Court grant a motion to dismiss under Rule 12(b)(3), it enjoys the discretion, in lieu of dismissal, to transfer the matter to a forum where venue is proper.  Roman-Salgado v. Holder, 730 F.Supp.2d 126, 129 (D.D.C. 2010).

plaintiff, the burden of showing that the venue is proper lies with the plaintiff.  Id. (citing Sun Dun, Inc. of Washington v. Coca-Cola Co., 740 F. Supp. 381, 385 (D. Md. 1990)); Bartholomew v. Virginia Chiropractors Assoc., 612 F.2d 812, 816 (4th Cir. 1979).

**B.      Plaintiffs' Claims Should be Dismissed Pursuant to the Doctrine of *Forum Non Conveniens* – Fed. R. Civ. P. 12(b)(3)**

**1.      Standard of Review for a Motion to Dismiss on *Forum Non Conveniens* Grounds**

The doctrine of *forum non conveniens* permits a district court to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Millennium Inorganic Chemicals, Ltd. v. National Union, 686 F. Supp. 2d 558, 561 (D. Md. 2010) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947)).  Determination of a *forum non conveniens* motion involves a two-step analysis.  The District Court must first determine whether an alternative forum exists.  Tang v. Synutr Int'l, Inc., No. 09-0088, 2010 U.S. Dist. LEXIS 29868, *14 (D. Md. Mar. 29, 2010) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981)).  If an alternative forum exists, the district court must then weigh the relevant private and public interests.  Id.

The relevant private interests include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses, (3) the cost of obtaining the attendance of willing witnesses; and (4) all other practical problems that make trial of the case easy, expeditious and inexpensive.  Millennium, 686 F. Supp. 2d at 561 (citing Gulf Oil, 330 U.S. at 508-09).  The relevant public interests include: (1) administrative difficulties due to court congestion; (2) the local interest in having local controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the state law that governs the case; (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum

with jury duty.  Id. (citing Gulf Oil, 330 U.S. at 508-09; Joanna SA v. Koninklijke Boskalis Westminster NV, 569 F.3d 189, 200 (4th Cir. 2009)).

As discussed below, consideration of these factors overwhelmingly supports the dismissal of this action.

### 2.    There is an Adequate and Alternative Forum

In general, the existence of an alternative forum is usually established when the defendants are amenable to process in the other jurisdiction.  Tang, 2010 U.S. Dist. LEXIS 29868, at *14 (citing Piper Aircraft, 454 U.S. at 255 n. 22).  If the remedy offered by the alternative forum is inadequate or unsatisfactory, the Court may conclude that dismissal would not be in the interests of justice.  Id. at *14-15.  However, only the most perilous obstacles to conducting litigation, evidenced by a complete absence of due process in the alternative forum will render the alternative forum inadequate.  Id. at *16.

In the event Plaintiffs elect to re-file their complaint to where this attack occurred, the Islamabad High Court of Pakistan is an adequate and alternative forum for Plaintiffs' claims because it offers Plaintiffs a clear process and remedy for resolving their dispute. [3]  See also Affidavit of Ahsan Zahir Rizvi, attached hereto as Exhibit "D," at ¶ 5.  Pakistan recognizes tort liability as alleged herein by Plaintiffs in the form of a claim under the Fatal Accidents Act of 1855, and there is no reason to believe that Plaintiffs will not be treated fairly in Pakistan.  Id. Any claim brought by a foreign plaintiff in excess of Rs. 2,500,000 (US $30,000) will be assigned to the Islamabad High Court.  Id. at ¶ 6.  Further, Pakistan possesses a legal system capable of enforcing a judgment if one is obtained.  Id. at ¶ 7.

---

[3] High courts exist in every province, and have jurisdiction over civil matters.  See Legal Profile of Pakistan, http://www.law.emory.edu/ifl/legal/pakistan.htm (last visited September 13, 2011). Further, the United States State Department has issued no warnings related to the Islamabad District Court or Pakistan's judicial system.  See United States State Department website, http://www.travel.state.gov/travel/cis_pa_tw/cis/cis_992.html, (Last visited, September 6, 2011).

It is expected that Plaintiffs will contend that they would face prejudice and potential harm litigating this case in Pakistan. Even if this were a valid consideration, Plaintiffs would not have to appear in Pakistani court to litigate this matter and any filings would be done through their attorneys. See Exhibit "D," at ¶ 8. Further, an alternative forum is not rendered inadequate simply because the legal theories available to plaintiffs are fewer or inconvenient. Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 768 (9th Cir. 1991) (lack of trial by jury does not render Japan inadequate forum); In re Union Carbide, 809 F.2d 195, 198-99, 202-03 (2d Cir. 1987) (India held adequate alternative forum despite procedural and substantive "disadvantages"); Lueck v. Sundstrand Corp., 236 F.3d 1137 (9th Cir. 2001) (although New Zealand law did not allow foreign plaintiffs to bring the same suit as that which would be brought in the U.S. against a U.S. based defendant, the New Zealand administrative compensation scheme provided a remedy that was not so inadequate as to be no remedy at all under the Piper Aircraft test); Jones v. Raytheon Aircraft Servs., 120 S.W.3d 40 (Tex. Ct. App. 2003) (plaintiffs had an adequate alternative forum in New Zealand for their wrongful death action despite administrative compensation scheme).

Additionally, political unrest is not a bar to granting a *forum non conveniens* dismissal. Transunion Corp. v. PepsiCo, Inc., 811 F.2d 127, 129 (2d Cir. 1987). "It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 982 (2d Cir. 1993) (*quoting* Chesley v. Union Carbide Corp., 927 F.2d 60, 66 (2d Cir. 1991)); see also Eastman Kodak Co. v. Kavlin, 978 F. Supp. 1078, 1084 (S.D. Fla. 1997) ("The 'alternative forum is too corrupt to be adequate' argument does not enjoy a particularly impressive track record"). So long as the alternative forum offers a remedy and process for resolving the dispute, it will be deemed adequate. Tang, 2010 U.S. Dist. LEXIS 29868, at *16. Indeed, under the low

7

threshold established by the Supreme Court in <u>Piper Aircraft</u>, dismissal on *forum non conveniens* grounds is improper only where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." <u>Piper Aircraft</u>, 454 U.S. at 254.

Should this case be dismissed and Plaintiffs elect to file a Complaint in Pakistan, Marriott would stipulate to jurisdiction and process in Pakistan. <u>See Tang</u>, 2010 U.S. Dist. LEXIS 29868, at *19 (stating that an agreement by the defendant to submit to the jurisdiction of the foreign forum satisfies the availability requirement); <u>Zohar Niv v. Hilton Hotels Corp.</u>, 710 F. Supp. 2d 328, 336 (S.D.N.Y. 2008) (where defendant was able to show adequate and alternative forum in Egypt by submitting stipulation that it was amenable to service in Egypt); <u>Colantonio v. Hilton</u>, No. 03-1833, 2004 WL 1810291, *4 (E.D. Pa. Aug. 13, 2004) (where defendant was able to show adequate alternative forum by stating that it was agreeable to continuing action in Italy). Moreover, Marriott would waive any applicable statute of limitations defense.[4]

### 3. Plaintiffs' Choice of Forum is Entitled to Little Deference

Plaintiffs' decision to file suit in Maryland is entitled to little deference because the operative facts giving rise to this terrorist attack and any alleged improper response by Hotel personnel occurred outside Plaintiffs' chosen forum and Plaintiffs did not file suit in their home forum. Plaintiffs are residents of Virginia and South Carolina. A plaintiff's choice of forum is given less deference where the plaintiff brings suit outside his or her home forum. <u>Tang</u>, 2010 U.S. Dist. LEXIS 29868, at *13-14 (*citing* <u>Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 430 (2007)). <u>See also</u> <u>Zinzler v. Marriott</u>, 605 F. Supp. 1499, 1504 (D. Md. 1985) (giving less deference to Austrian citizen's choice of forum in District of Maryland for breach of contract action brought against Austrian bank and Delaware corporation); <u>Piper Aircraft</u>, 454 U.S. at 256 (stating that because the central purpose of any *forum non conveniens*

---

[4] Should this Court require, Marriott is prepared to submit a stipulation waiving any applicable statute of limitations defense and to stipulate to jurisdictional process.

inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less

deference).

Further, a plaintiff's choice of forum is given *no weight* where none of the conduct

complained of occurred in the forum and the forum has no connection with the matter in

controversy. Cole-Tuve, Inc. v. American Machine Tools Corp., 342 F. Supp. 2d 362, 370 (D.

Md. 2004). See e.g., Tang, 2010 U.S. Dist. LEXIS 29868, at *39 (where foreign plaintiff's

choice of forum was given little deference as all of the operative facts occurred in China); Lynch

v. Vanderhoef Builders, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (where plaintiff's choice of

forum was given little deference where the accident occurred entirely in Pennsylvania); Ralph v.

Long, 2001 WL 706034, *2 (D. Md. June 14, 2001) ("A plaintiff's choice of forum is generally

accorded considerable deference, unless the plaintiff is a non-resident of either that forum or of

the location where the cause of action arose").

Here, Marriott contends that all of the material facts surrounding the operation of the

Hotel, the measures undertaken to respond to the terrorist attack and the circumstances behind

Mr. DeFederico's death, occurred in Pakistan. Indeed, a review of Plaintiffs' factual allegations

confirms that the alleged negligent conduct at issue occurred in Pakistan. Plaintiffs contend that

"Defendant's personnel deviated from mandatory standards required by "Threat Condition Red."

See Exhibit "A," at ¶ 28. Plaintiffs blame "Defendant's security personnel" for negligently

assessing the situation as an apparent routine traffic matter and taking no steps to alert hotel

guests. Id. at ¶ 29. Plaintiffs conclude that security personnel, Hotel staff and other Hotel

personnel were negligent in failing to notify and evacuate Hotel guests during the seven minute

interval from when the truck was disabled at the barrier until it detonated. Id. at ¶¶ 30-35. While

Marriott acknowledges Plaintiffs' claim of alleged deficiencies with Marriott's security

procedures, the alleged improper conduct at hand, if true as described in Plaintiffs' Amended

Complaint, all occurred in Pakistan and would have been carried out by franchisee employees, hired and trained by the Hotel owner, not Marriott.  To that end, Plaintiffs' choice of forum should be given little deference.

### 4.      The Private Interest Factors

There are four (4) private interest factors that a court should consider in assessing the convenience of a Plaintiffs' chosen forum:

> (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses, (3) the cost of obtaining the attendance of willing witnesses; and (4) all other practical problems that make trial of the case easy, expeditious and inexpensive.

Millennium, 686 F. Supp. 2d at 561 (*citing* Gulf Oil, 330 U.S. at 508-09).  Here, each of these factors overwhelmingly confirms that Maryland is not the most convenient or appropriate forum to litigate this case.

### a)      Sources of Proof

All material sources of proof in this case are located in Islamabad, Pakistan.  Where the vast majority of necessary witnesses and documentary evidence are most easily, if not exclusively, accessible in another forum, this factor weighs heavily in favor of dismissal.  Zohar NIV v. Hilton Hotels Corp., 710 F. Supp. 2d 328, 341 (S.D.N.Y. 2008).  See also Colantonio v. Hilton, No. 03-1833, 2004 WL 1810291 (E.D. Pa. Aug. 13, 2004) (granting *forum non conveniens* dismissal where all sources of proof in plaintiff's premises liability claim were in Italy); Rudisill v. Sheraton Copenhagen Corp., 817 F. Supp. 443 (D. Del. 1993) (finding that private interests favored dismissal where all of the evidence necessary for the prosecution of plaintiff's slip and fall case was in Denmark, including the architect who designed the shower, medical providers, hotel employees, as well as hotel documents and medical records).

The decision in <u>Zohar</u> is instructive on Marriott's present request for a dismissal under the doctrine of *forum non conveniens*.  In <u>Zohar</u>, plaintiffs brought suit for negligence and wrongful death as a result of the 2004 terrorist bombing at the Hilton Taba Hotel in Egypt. <u>Zohar</u>, 710 F. Supp. 2d at 329.  Like the DiFederico Plaintiffs, plaintiffs alleged that Hilton failed to exercise reasonable care to protect its guests where criminal activity was reasonably foreseeable.  <u>Id.</u> at 330.  In response, Hilton sought dismissal based on *forum non conveniens*. <u>Id.</u>

When called upon to assess the <u>private</u> <u>interests</u>, the District Court found that a majority of the evidence necessary for the case was more readily accessible in Egypt or Israel than in the U.S., including statements by managers and security guards at the hotel, hospital records of the injured victims and decedents from Egyptian hospitals, as well as Egyptian government agency documents relevant to the standard of care for hotels.  <u>Zohar</u>, 710 F. Supp. 2d at 340.  Further, the necessary witnesses, including police officers, hotel security, hotel employees, and the hotel manager, were all located in Egypt.  <u>Id.</u> at 340-41.  Based on this, the Court held that the private interest of ease of access to sources of proof (or lack thereof) weighed heavily in favor of dismissal.  <u>Id.</u> at 341.

This action is virtually identical to the <u>Zohar</u> decision in that Plaintiffs are alleging negligence and wrongful death claims stemming from a terrorist bombing of a hotel in a foreign country.  Marriott requests that this Court reach the same conclusion as the <u>Zohar</u> court.  All relevant and necessary sources of proof as to the events giving rise to this incident and the actions by security personnel when confronted by the terrorist, are in Pakistan.  The necessary witnesses, including police officers, Hotel security, Hotel employees, local engineers and the Hotel manager are located in Pakistan.  Critical evidence pertaining to this terror attack include the official investigation documents from the ISI, Federal Intelligence Agency, Intelligence

Bureau and Islamabad police.  <u>See</u> Exhibit "D," at ¶ 9.  When a crime, such as the 2008 terror

attack at the Islamabad Marriott Hotel is committed, the local police file a "First Information

Report" (FIR) at the police station in the jurisdiction where the crime was committed.  <u>Id.</u> at ¶

10.  Reports from the Intelligence Bureau's Chief Investigating Officer (Mir Fuad Asadullah),

regarding the bombing at the Islamabad Marriott Hotel are also created and maintained in

Pakistan and are written in Urdu.  <u>Id.</u> at ¶ 11.  Reports from the contracted security guards at the

Hotel, who were uniformed retired Pakistani police, concerning hotel security measures and the

bombing are all located in Pakistan and written in Urdu.  <u>Id.</u>

 As a criminal trial of the perpetrators of the bombing has already occurred in Pakistan,

many of the official reports were already introduced during the criminal trial.  These reports,

which would include statements from witnesses, the FIR, charge sheets, articles recovered from

the crime scene and testimony on how the criminal defendants carried out the bombing are

extremely relevant to the issues in this lawsuit and are located in Pakistan.  <u>Id.</u> at ¶¶ 10-14.  The

security measures implemented by the Hotel, contracted security officials and/or local

government officials, including the permissible use of certain roads in Islamabad by trucks

during limited hours of the day, are issued orally or in writing, mostly in Urdu, and maintained

exclusively in Pakistan.  <u>Id.</u>

 Additional sources of proof include: (1) the incident scene itself, (2) the location of the

anti-terror perimeter barrier that stopped the truck, (2) statements by Pakistani employees,

managers and security of the Hotel, (3) Pakistani government documents relating to the standard

of care for security in Pakistani hotels,  and (4) records related to security protocol and training at

the Hotel.  <u>See</u> Exhibit "C" (noting the attack was investigated by military and local Islamabad

police).  <u>See</u> <u>also</u> International Centre for Political Violence and Terrorism Research Case Study,

attached hereto as Exhibit "E," (a comprehensive case study on the bombing which cites to numerous factual documents and eyewitnesses, all of which are located in Pakistan).

To support their underlying negligence claim, Plaintiffs will need discovery from Hotel personnel on their knowledge, skill and training to carry out local governmental requirements and other Pakistani laws and regulations on anti-terror procedures.  Plaintiffs will need to depose the "Defendant's personnel [that] deviated from mandatory standards required by 'Threat Condition Red.'"  See Exhibit "A," at ¶ 28.  Plaintiffs will need discovery from "Defendant's security personnel" and other Hotel staff and personnel regarding assessment of the terror attack, the efforts made to address the attack, and any plans that may have been implemented to notify Hotel personnel during the 7 minute interval from when the truck was detained at the barrier until it detonated.  Id. at ¶¶ 30-35.  These witnesses reside in Pakistan.

Further, Plaintiffs will need to demonstrate, following a site inspection and analysis, whether the Hotel's anti-terror measures, including the 132 foot setback anti-terrorist gate created by the Hotel owner, satisfied local ordinances and laws.  Plaintiffs will need to obtain discovery from Hotel personnel, local architects and contractors responsible for anti-terror measures to determine the appropriateness of the security gates outside the Hotel that prevented the dump truck from reaching the Hotel.  Necessary witnesses will include the police officials who responded to and investigated the attack, as well as government officials involved in the investigation.  These witnesses reside in Pakistan.  As in Zohar, the relative ease of access to any sources of proof overwhelmingly weighs in favor of dismissal of this matter.

> **b)**     **Witnesses Will be Unavailable and Costly if This Action Proceeds in This District**

The majority of witnesses, both quantitatively and qualitatively, reside in Pakistan, making it the more convenient forum for this litigation.  Where the events giving rise to the action occurred primarily, if not exclusively in another country, it is reasonable to assume that

there will be more witnesses in that country than in the United States, and that the relevant evidence is much more likely to be found in that country.  See Tang, 2010 U.S. Dist. LEXIS 29868, at *39 (finding that the private interests favored China because the events giving rise to this action occurred primarily in China, and thus there would be more relevant Chinese witnesses).

Here, the necessary and relevant liability witnesses (whether they be willing or unwilling) reside in Pakistan or elsewhere around the world.  All Hotel employees, government employees, military personnel and local contractors charged with security at the Hotel, and in the vicinity of the Hotel, would be required to seek the consent of their public sector employers prior to testifying about any matters that came to their knowledge during their performance of their work. See Exhibit "D," at ¶ 15.  Other important witnesses include: the Pakistan officials who investigated the Hotel bombing including the ISI, Federal Intelligence Agency, and Intelligence Bureau; the local police officer(s) involved in maintaining security on the streets and enforcing curfews on large vehicle traveling in Islamabad; the Hotel employees who observed the truck crash into the security gate and those that attempted to extinguish the fire in the truck; Hotel personnel charged with alerting patrons of the incident and implementing an evacuation route; and the General Manager of the Hotel.  See Exhibits "D," "E."  These witnesses, if they survived the bombing, reside in Pakistan and are not subject to the subpoena power of the courts of the United States. [5]  Moreover, Pakistani courts will not assist this Court in compelling Pakistani witnesses to appear in Maryland for testimony.  See Exhibit "D," at ¶ 17.  Many of the relevant

---

[5] Because Pakistan is not a signatory to the Hague Convention on Taking Evidence Abroad in Civil or Commercial Matters, it is unlikely that the Pakistan Courts will honor requests of a foreign court to compel the production of documents or testimony of witnesses.  See Zohar, 710 F. Supp. 2d at 341-42 (considering the inability of the parties to use letters rogatory to get foreign evidence as a factor weighing in favor of dismissal).

documents in this matter can only be obtained in a Pakistani court.  Id.  Only a Pakistani court can issue an order to obtain internal reports of the Pakistani government.

Finally, the cost of producing willing witnesses would be significant.  As such, the cost, time and burden to bring material witnesses to Maryland for depositions and trial would be overwhelming and unduly burdensome, if not impossible.  See Zohar, 710 F. Supp. 2d at 342 (finding that the inability to compel relevant non-party witnesses weighed in favor of dismissal). Thus, given that the quantitative and qualitative majority of liability witnesses reside and are only available in Pakistan, the Court should find that the convenience of witnesses' factor supports dismissing this action in favor of a Pakistani forum.

### c)    Other Practical Problems

Proceeding in this district would pose other problems as well.  As most of the material witnesses speak only Urdu, and because much of the documentary evidence would be written in that language as well, translation services would be required for all of the documentary evidence and testimony obtained.  Retaining translation services for all of the evidence would be incredibly costly for all parties involved and result in prolonged discovery.

Further, should this case proceed in Maryland, Marriott would likely need to commence third party actions for contribution and indemnification against potential responsible Pakistani third parties.  Potential third party defendants would include the architects and engineers who designed the Hotel and the anti-terror bomb gates, the general contractor that constructed the gates, local police authorities that control traffic curfews on the type of truck used in the bombing, the Hotel owner and operator, local contractors hired to carry out security measures, Pakistani government officials charged with implementing Pakistan's war on terrorism and those allegedly responsible for the decedent's death – Al-Qaeda and the Taliban.

All of these potential liable parties would be beyond the jurisdiction of this Court.  Given that security is a critical component to Plaintiffs' theory of liability, the inability to join these necessary parties would result in irreparable harm to Marriott's defense of this matter.  See Piper Aircraft, 454 U.S. at 259 (finding that the inability to join other parties to an action in the forum, when those entities could be joined in another jurisdiction, weighs in favor of dismissal); Karlitz v. Regent Int'l Hotels, No. 95-10136, 1997 U.S. Dist. LEXIS 2111, *7 (S.D.N.Y. 1997) (finding that the hotel defendant's inability to implead a third party construction company in Hong Kong weighed in favor of dismissal).

### 5.     The Public Interest Factors Weigh in Favor of Dismissal

The public interest factors relevant to a motion to dismiss on *forum non conveniens* grounds include:

> (1) administrative difficulties due to court congestion; (2) the local interest in having local controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the state law that governs the case; (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.

Millennium, 686 F. Supp. 2d at 561 (*citing* Gulf Oil, 330 U.S. at 508-09; Joanna SA v. Koninklijke Boskalis Westminster NV, 569 F.3d 189, 200 (4th Cir. 2009)).  As set forth below, each of these public interest factors overwhelmingly weigh in favor of dismissing this action in favor of a proceeding in Pakistan.

### a)     The Administrative Requirements of this Action Would Unduly Burden This Court's Already-Overloaded Docket

The anticipated administrative requirements for this action would burden an already-crowded docket in this District.  Courts may validly protect their dockets from cases which arise within their jurisdiction, but which lack significant connection to it.  Pain v. United Technologies Corp., 637 F.2d 775, 791-92 (D.C. Cir. 1980).  The 2010 Judicial Caseload Profile indicates that

this District ranks second in the Circuit and 34th among all district courts in the total number of

civil filings per judgeship.  See 2010 Judicial Caseload Profile for the District of Maryland

attached as Exhibit "F."  Overall, the District of Maryland had 4,532 filings in 2010.  Id.  As a

general proposition, "[a]dministrative difficulties follow for courts when litigation is piled up in

the congested centers instead of being handled at its origin."  Gulf Oil, 330 U.S. at 508-9.  As the

majority of important witnesses, documents and investigatory reports are located in Pakistan, it

makes practical sense to dismiss this action in favor of a more convenient forum and to provide

some relief to this Court's already crowded docket.

> **b)      Pakistan has a Substantial Local Interest in Having a Controversy Arising out of a Terrorist Incident on its Soil Decided at Home**

Plaintiffs' claims arise out of a terrorist incident that has been referred to as "Pakistan's

9/11."  See Exhibit "A," at ¶ 25.  Indeed, according to national media accounts, this horrific

attack, that killed 56 people from around the world, and injured at least 266, involved the largest

amount of explosives ever in a terrorist strike in the Pakistani capital.  See Exhibit "C."  The

attack occurred near the Pakistani Parliament building and the Pakistan Prime Minister's home

and was purportedly intended for Pakistani leadership, who had originally planned to meet at the

Hotel.  Id.  See also Exhibit "E," at p. 4.  Given the severity of the attack and its impact on

Pakistani society and its war on terror, there is no question that Pakistan has a substantial local

interest in having this incident adjudicated on its on soil.  See Zohar 710 F. Supp. 2d at 345

("While the United States has an interest in the actions of corporations created under its laws,

this interest is much less significant than a country's interest in adjudicating the cases that

directly impact that country's citizens").

In Zohar, the District Court found that Egypt had a significant interest in adjudicating

claims that arose out of terrorist attacks on its soil.  Zohar, 710 F. Supp. 2d at 345.  "This is

particularly true when those attacks were targeted at tourists, whose safety and security is entrusted to the Egyptian Tourist Police Department…"  Id.  Even though some of the security plans were developed in New York, the vast majority of the security determinations were made in Egypt, and thus, Egypt had a substantial interest in deciding this controversy, and thus weighed in favor of dismissal.  Id.  Similarly here, while Plaintiffs contend that threat condition codes and security measures were developed by Marriott in Maryland, Hong Kong and London, Plaintiffs equally admit that their claim is grounded upon the security determinations and actions that occurred at the Hotel in Pakistan.  See Exhibit "A," at ¶ 16.  Pakistan certainly has a substantial interest, indeed the more compelling interest, in deciding this controversy.

Although it could be argued that a District Court has an interest in protecting the rights of United States citizens who travel abroad, these interests are secondary to the interests of Pakistan in this action.  Pakistan has a significant interest in providing a safe haven for its citizens and tourists who visit Islamabad.  It also has a strong interest in determining how to assess liability against any of its citizens who may be responsible for Albert DiFederico's death and the death of 55 others, the majority of whom were Hotel personnel and local security.  Plaintiffs, on the other hand, cannot point to any substantial interest sufficient to take precedence over Pakistan's interest in this matter.

Plaintiffs allege that Marriott supposedly oversaw security plans for the Hotel, and hired a former Green Beret to form a crisis management team.  See Exhibit "A," at ¶ 15.  Taking Plaintiffs' allegations as true, implementation of these security procedures would necessarily require testimony and documents from relevant witnesses in Pakistan, not Maryland.  As the worst terrorist attack in Pakistan's history, Pakistan has a decisive interest in resolving this matter on its soil.

**c)** **Trial of a Diversity Case Which Arose in Pakistan Should Occur in Pakistan Because it is Familiar with the Foreign Law that Governs the Case**

The Pakistani courts are more familiar with the law to be applied in this case.  Pakistani law is comprised of statutes and the law as declared by the Supreme Court of Pakistan.  See Exhibit "D," at ¶ 18.  Thus, this Court's interpretation of the legal principles of Pakistan would have to be made in light of the judgments and precedent of the High Courts of Islamabad and all the provinces of Pakistan and the Supreme Court of Pakistan.  Id.  It will be imperative, and costly, to have foreign law experts at the parties and the Courts' disposal.

Plaintiffs allege that Marriott breached its duty to the patrons of the Hotel.  Essentially, Plaintiffs allege a boilerplate, premises liability negligence claim to impose liability on a Maryland based company for one of the worst suicide bombings in Pakistan's history.  Plaintiffs' allegations not only imply, but indeed require, application of Pakistani law to determine what duty of care was owed for its guests.  As set forth above, this Court would need to analyze Pakistani case law relevant to this claim, as well as review and apply the Pakistan Hotels and Restaurants Act of 1976, which is the controlling law on regulating the standard of service and amenities for tourists in Pakistan hotels.  See Exhibit "D," at ¶ 19.

In the present forum, the Court would be substantially burdened with attempting to untangle conflict of law problems, and the interaction of foreign law to itself, while the same concerns would not be presented in Pakistan.  See Tang, 2010 U.S. Dist. LEXIS 29868, at *41-42 (citing Gulf Oil Corp., 330 U.S. at 509) (stating that the Court would be substantially burdened with attempting to untangle problems with the applicable Chinese law).  As such, this Court has routinely transferred cases where another court is more familiar with the law to be applied in the case.  See e.g., Lynch v. Vanderhoef Builders, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (granting transfer where District of Pennsylvania was more familiar with the Pennsylvania law to be applied); Dicken v. U.S., 862 F. Supp. 91, 94 (D. Md. 1994) (granting transfer where

District of Kansas was more familiar with Kansas law to be applied); Grodinsky v. Fairchild Industries, Inc., 507 F. Supp. 1245, 1252 (D. Md. 1981) (stating that the need to interpret foreign law is an important consideration for dismissal in a *forum non conveniens* analyses).  Thus, this dispute should be dismissed to allow the court most familiar with the law to be applied to adjudicate the matter.

**d)     Avoidance of Unnecessary Problems in the Application of Pakistani Law**

Requiring an American court to apply foreign law supports dismissal on the ground of *forum non conveniens*.  When determining whose substantive law applies to diversity claims, a district court applies the conflict of law rules of the state in which it sits.  Wissam Abdullateff Sa'eed Al-Quraishi v. Adel Nakhla, 728 F. Supp. 2d 702, 761 (D. Md. 2010) (*citing* Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)).  As such, Maryland's conflict of law rules apply.  Maryland adheres to the *lex loci delicti* rule in analyzing choice of law problems with respect to causes of action sounding in torts.  Wissam, 728 F. Supp. 2d at 761 (*citing* Philip Morris Inc. v. Angeletti, 752 A.2d 200, 230 (Md. 2000); Kortobi v. Kass, 182 Md. App. 424, 957 A.2d 1128, 1139 (Md. App. 2008); see also Lab. Corp. of Am. v. Hood, 911 A.2d 841, 845 (Md. 2006) ("Unlike most other States, which have abandoned the *lex loci delicti* approach espoused in §§ 378-390 of the Restatement (First) of Conflicts of Law in favor of the 'significant contacts' test enunciated in §§ 6, 145, and 146 of the Restatement (Second) of Conflicts of Law, Maryland continues to adhere generally to the lex loci delicti principle in tort cases").

"*Lex loci delicti* dictates that 'when an accident occurs in another state substantive rights of the parties, even though they are domiciled in Maryland, are to be determined by the law of the state in which the alleged tort took place.'"  Philip Morris, 752 A.2d at 230 (*quoting* White v. King, 244 Md. 348, 223 A.2d 763, 765 (Md. 1966)).  "Where the events giving rise to a tort action occur in more than one state, the court must apply 'the law of the State where the injury -

20

the last event required to constitute the tort – occurred.'" <u>Ben-Joseph v. Mt. Airy Auto Transporters, LLC</u>, 529 F. Supp. 2d 604, 606 (D. Md. 2008) (*quoting* <u>Erie Ins. Exch. v. Heffernan</u>, 925 A.2d 636, 649 (Md. 2007)). <u>See</u> <u>e.g.</u>, <u>Wissam</u>, 728 F. Supp. 2d at 761 (holding that Iraqi law applied because the torture and mistreatment of Plaintiffs occurred in Iraq); <u>Ben-Joseph</u>, 529 F. Supp. 2d at 607 (applying New Jersey law because car accident occurred in New Jersey, despite the fact that defendant was based in Maryland); <u>Baker v. Booz Allen Hamilton, Inc.</u>, 358 Fed. Appx. 476, 2009 WL 5125672, at *3-4 (4th Cir. 2009) (unpublished per curiam decision) (applying Maryland's *lex loci delicti* rule) (in negligent hiring and supervision suit brought in Maryland against Virginia-based employer of American contractor working in Kyrgyzstan who raped child of another American contractor in Kyrgyzstan, district court held that Kyrgyz tort law applied; affirming district court's decision on other grounds).

Given these principles, looking as they do to where the alleged tort occurred, the inescapable conclusion is that the alleged wrongs occurred in Pakistan. It was there that the terrorist bombing occurred and injured hundreds of civilians, including Albert DiFederico. Thus, even if training or security recommendations allegedly came from Maryland, it is immaterial in what state the defendant set the force in motion. <u>Wissam</u>, 728 F. Supp. 2d at 762. It was not until the terrorist attack was carried out in Pakistan did the last act necessary to constitute Plaintiffs' claims occur. Thus, under Maryland's *lex loci delicti* rule, Pakistani law applies to this action.

Therefore, if this case remains in this District, the Court will be faced with the daunting, burdensome task of applying Pakistani law, including interpreting decisions from Islamabad's High Court and Pakistan Supreme Court. This will also necessarily include interpretation of Pakistani statutes. Local ordinances would need to be considered as well. At the time of the attack, local Islamabad ordinances barred any trucks from entering the city during daytime hours.

See Exhibit "C."  Given that this Court may not have extensive experience with Pakistani law, it will be imperative, and costly to have foreign law experts at the parties and Court's disposal. Given these difficulties and unnecessary costs, it is far more economical and practical to have the Pakistani courts decide this matter.

### e)  Imposing Jury Duty on Citizens of This District for a Terrorist Attack in Pakistan Would Be Unfair

The imposition of jury service on citizens of a forum that has virtually no connection to the intentional acts giving rise to the litigation is a significant factor in a *forum non conveniens* analysis and weighs in favor of dismissal.  See Gulf Oil, 330 U.S. at 508.  For example, in Tang, the plaintiffs, who were Chinese citizens, brought a class action lawsuit for injuries resulting from the consumption of tainted baby milk.  Tang, 2010 U.S. Dist. LEXIS 29868, at *7.  The defendant, a Maryland based company, was the parent entity of the Chinese plants that manufactured the tainted milk.  Id.  In response to the plaintiffs' decision to file suit in Maryland, the defendant sought dismissal under *forum non conveniens*.  Id. at *8.  In its analysis of the public factors, the District Court held that imposing jury duty on the citizens of this District for a dispute involving an international holding company and its subsidiary for injuries inflicted abroad was unwarranted.  Tang, 2010 U.S. Dist. LEXIS 29868, at *42.

So too here.  This forum has no connection to the horrific, premeditated acts giving rise to this litigation, all of which occurred in Pakistan.  The crux of this case is a terrorist attack which occurred in Pakistan, resulting in injuries to 266 Pakistani and international citizens, which was investigated by the Pakistani local and national police and hotel security.  It implicates security procedures and training controlled and overseen by local security officials and the Pakistani government.  The District of Maryland and its citizens have little interest in a case involving the extent of liability, if any, of the Pakistani company which owns the Hotel.  As in Tang, imposing jury service on the citizens of this forum for a dispute involving an

international company for injuries inflicted abroad is unwarranted and this factor, too, weighs heavily in favor of dismissal.

## IV.    CONCLUSION

For the reasons set forth above, Marriott respectfully requests that the Court dismiss this action based on doctrine of *forum non conveniens* as it would be more convenient for the parties, witnesses, and the Court if this matter proceeded in the adequate and available forum provided by the Pakistan courts.  Moreover, Marriott would face extreme prejudice defending this suicide bombing with no access to all material sources of proof in Pakistan.


COZEN O'CONNOR

BY:    /s/ Ronald F. Wick
   Ronald F. Wick, Esquire
   Paul K. Leary, Jr., Esquire
   (admitted pro hac vice)
   1627 I Street, N.W., Suite 1100
   Washington, DC 20006-4007
   Telephone: (202) 912-4800
   Facsimile: (202) 912-4830

   *Attorneys for Defendant,*
   *Marriott International, Inc.*

Dated:   September 19, 2011

## <u>CERTIFICATE OF SERVICE</u>

I, Ronald F. Wick, hereby certify that on the 19th day of September 2011, I served a copy

of the foregoing Motion to Dismiss on the following via ECF:


Jonathan A. Azrael, Esquire
AZRAEL, FRANZ, SCHWAB & LIPOWITZ, LLC
101 E. Chesapeake Avenue, 5th Floor
Towson, MD 21286

Andrew C. Hall, Esquire
Matthew P. Leto, Esquire
HALL, LAMB AND HALL, P.A.
2665 S. Bayshore Drive, Penthouse One
Miami, FL 33133
*Attorneys for Plaintiff*



*/s/ Ronald F. Wick*
Ronald F. Wick


PHILADELPHIA\6179703\4  287601.000

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | : | |
| MARY DIFEDERICO, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 8:11-CV-01508-RWT |
| | : | |
| MARRIOTT INTERNATIONAL, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2011, upon consideration of Defendant

Marriott International, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint, IT IS HEREBY

ORDERED that Defendants' Motion is GRANTED and Plaintiffs' claims against Defendant

Marriott International, Inc., are dismissed with prejudice.


_____
The Hon. Roger W. Titus