**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **MARY DIFEDERICO,** *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Case No.: RWT 11cv1508 |
| | * | |
| **MARRIOTT** | * | |
| **INTERNATIONAL, INC.,** | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | *** | |

**MEMORANDUM OPINION**

On June 23, 2011, Plaintiffs filed a three-count Amended Complaint against Marriott

International, Inc. ("Marriott") asserting claims for wrongful death, survivorship, and vicarious

liability arising out of the September 20, 2008, terrorist attack on the Marriott Hotel in

Islamabad, Pakistan.[1]  Doc. No. 3.  Marriott has moved to dismiss based on the doctrine of *forum*

*non conveniens*, arguing that the matter should proceed in Pakistan.  Doc. No. 23.  On March 26,

2012, the Court held a hearing on the motion.  For the reasons discussed below, Marriott's

motion will be granted, and the Amended Complaint will be dismissed without prejudice.

**I.      Background Facts**

On September 20, 2008, at 7:55 p.m., a dump truck filled with 1,320 pounds of

explosives, artillery shells, mortar bombs, and shrapnel entered the driveway and impacted the

anti-terrorist vehicle crash barrier at the Islamabad Marriott hotel.  Am. Compl. ¶ 28.  Plaintiffs

allege that the suicide bomber within the cab of the truck initiated an explosion, but the device

malfunctioned.  *Id*. ¶ 30.  A fire started in the cab of the truck, but the explosives did not detonate

---

[1] The original complaint was filed on June 2, 2011, Doc. No. 1, but was amended before Marriott was served.

immediately. Approximately seven minutes later, a second explosion occurred in the rear of the truck resulting in a fire that destroyed the hotel, killing fifty-six people including Albert DiFederico. *Id.* ¶ 34.

Plaintiffs[2] allege that Marriott was negligent in defending the hotel against terrorist attacks and in responding to the specific attack in 2008. Plaintiffs claim that the level of terrorist activity in Islamabad and the image of the Islamabad Marriott Hotel having western ties created a general environment in which a reasonable person would have protected against future terrorist attacks. *Id*. ¶ 13. Plaintiffs contend that Marriott was negligent in developing and carrying out its anti-terrorism plan and otherwise failing to protect the decedent. *Id.* ¶ 24.

The Amended Complaint sets forth details of the hotel's security procedures and how the personnel in Pakistan allegedly deviated from Marriott's standards. *Id.* ¶¶ 16-24. Plaintiffs claim that security and hotel employees failed to respond appropriately when the truck containing the explosives entered the compound and then after the fire started. *Id.* ¶¶ 28-34. Plaintiffs allege that the later explosion could have been averted if hotel personnel had acted promptly by putting out the fire and alerting hotel guests of the impending danger. *Id.* ¶ 35.

In its motion to dismiss, Marriott argues that the hotel is "a franchised hotel owned and operated by Hashwani Hotels Limited ("Hashwani"), a public limited company organized under the laws of Pakistan." Doc. No. 23 at 2. Hashwani is not a Marriott subsidiary, but rather a separate, independently operated company. *Id.* at 2-3. Marriott states that it had a general crisis management plan in 2008 that it shared with both managed and franchised hotels. *Id.* at 3. "This plan established various threat conditions pursuant to recommendations from independent security services companies based in Hong Kong, London, and the United States." *Id.* Marriott

---

[2] The Plaintiffs are Mary DiFederico, the widow of Albert DiFederico and Personal Representative of his estate, and Nicholas DiFederico, Erik DiFederico, and Greg DiFederico, his three sons.

"provides guidance to assist its franchised hotels with their respective local crisis management plans . . . Marriott, however, relies exclusively on the owners of franchised hotels to implement specific security measures for the respective hotels." *Id.*

Hashwani, not Marriott, retained its own security company. *Id.* Hashwani was "solely responsible for the creation and installation of a 132-foot setback security gate to protect the hotel" and it "was responsible for interviewing and hiring security personnel to protect the hotel." *Id.* Marriott contends that "Hashwani independently implemented numerous security measures at the hotel including the use of closed circuit television monitored 24 hours a day, the use of underground security cameras to inspect all incoming vehicles at the set-back gate, hiring of armed officials to patrol the property and the use of bomb sniffing dogs." *Id.* Marriott "did not hire or train any of the security personnel or any of the Hotel employees that responded to the terrorist attack . . . [but it] did hire a third party auditor to perform random audits at franchised hotels to assess compliance with Marriott's crisis management plan." *Id.*

The Plaintiffs filed suit in Maryland alleging that Marriott "retained complete control and authority at its Maryland headquarters (where it developed security and training procedures) to identify and respond to potential terrorist threats which its franchisees were required to follow." Doc. No. 29 at 5. Marriott maintains that the suit should be brought in Pakistan because the "attack occurred on foreign soil, by international terrorists, at a hotel owned and operated by a Pakistani corporation." Doc. No. 23 at 4.

## II.     Standard of Review

A court may dismiss on *forum non conveniens* grounds "where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v.*

*Reyno*, 454 U.S. 235, 249 (1981). "A *forum non conveniens* dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum." *Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 246 (4th Cir. 2011) (quotation omitted). "The defendant bears the burden of persuading the court that the plaintiff's choice of forum is sufficiently inconvenient to warrant dismissal."[3] *Millennium Inorganic Chems. v. Nat'l Union Fire Ins. Co.*, 686 F. Supp. 2d 558, 561 (D. Md. 2010) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), *superseded on other grounds by* 28 U.S.C. § 1404); *see also Tang*, 656 F.3d at 249. "The court usually gives less deference to a plaintiff that has not chosen to bring the case in its home country, but 'this lack of deference is muted when the defendant is a resident and citizen of the forum he seeks to have declared inconvenient for litigation.'" *Millennium Inorganic*, 686 F. Supp. 2d at 561 (quoting *Galustian v. Peter*, 591 F.3d 724, 732 (4th Cir. 2010)).

## III.    Analysis

The Fourth Circuit has established a three-part analytical framework to guide a court's analysis for a motion to dismiss on the basis of *forum non conveniens*. "A district court must determine whether the alternative forum is: 1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved." *Tang*, 656 F.3d at 248 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). "Availability will ordinarily 'be satisfied when the defendant is amendable to process in the other jurisdiction.'" *Id.* (quoting *Piper Aircraft*, 454 U.S. at 255 n.22). "A foreign forum is adequate when (1) all parties can come within that

---

[3] Marriott incorrectly argues that "the burden of showing that the venue is proper lies with the plaintiff." Doc No. 23 at 4-5 (citing *Silo Point II LLC v. Suffolk Construction Co., Inc.*, 578 F. Supp. 2d 807, 809 (D.Md. 2008)). *Silo Point* does not announce that standard. Instead, *Silo Point* involved a motion to dismiss pursuant to Rule 12(b)(3) based on a forum selection clause. Marriott appears to rely on case law for dismissal based on improper venue, which requires a plaintiff to demonstrate that the choice of venue is proper, rather than cases that discuss dismissal for *forum non conveniens*, which places the burden of persuasion on the defendant.

forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Id*. (quotation omitted). "Although some courts conflate these issues, the availability and adequacy of the supposed forum are better seen as raising independent issues that warrant separate consideration by the court." 14D CHARLES A WRIGHT, ET AL., *Federal Practice & Procedure* § 3828.3 (3d ed. 2007).

If a court finds that the alternative forum is both available and adequate, it must then weigh the private and public interest factors. "The relevant private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining willing witnesses; and (4) other practical problems involving efficiency and expense of trial." *Millennium Inorganic*, 686 F. Supp. 2d at 561 (citing *Gulf Oil,* 330 U.S. at 508-09). "A primary concern when evaluating the private factors is to ensure that the plaintiffs did not select an inconvenient forum for the purpose of harassing the defendants." *Id.* "The public interest factors consist of the: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized controversies decided "at home;" (3) interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) unfairness of burdening citizens of an unrelated forum with jury duty." *Id.* (citing *Gulf Oil,* 330 U.S. at 508-509).

a. **Availability of an Alternative Forum**

"Availability will ordinarily 'be satisfied when the defendant is amendable to process in the other jurisdiction.'" *Tang*, 656 F.3d at 248 *(*quoting *Piper Aircraft*, 454 U.S. at 255 n.22). "Where the remedy offered by the alternative forum 'is so clearly inadequate or unsatisfactory

that it is no remedy at all,' however, the court 'may conclude that dismissal would not be in the interests of justice.'" *Tang v. Synutra Int'l, Inc.*, Case No. DKC-09-0088, 2010 WL 1375373, at *4 (D. Md. March 29, 2010), *aff'd* 656 F.3d 242 (4th Cir. 2011).

Marriott argues that an alternative forum is available in Pakistan, and it would stipulate to jurisdiction and process in Pakistan if the Court dismisses this case and Plaintiffs file in Pakistan. Doc. No. 23 at 8. Plaintiffs do not attack this argument.

During the hearing on the motion, Plaintiffs' attorney suggested for the first time that even if Marriott waives the statute of limitations defense as it indicated it will, Plaintiffs' claims may still be subject to dismissal. *Compare* Doc. No. 29 at 4 n.4 ("It should be noted that the Pakistani Limitations Act of 1908 provides for a one year statute of limitations for claims under the Fatal Accidents Act of 1855 . . . . However, Plaintiffs recognize that Marriott has stated . . . that it would waive the statute of limitations in this circumstance) *with* Oral Argument at Motions Hearing, March 26, 2012, at 12:24:50 (arguing that the Pakistani Limitations Act of 1908 cannot be waived). Marriott did not address this new argument at the hearing and maintains that it will waive any statute of limitations defense in Pakistan.

As a general rule, the Fourth Circuit has held that "if the statute of limitations has expired in the alternative forum, the forum is not available, and the motion to dismiss based on *forum non conveniens* would not be appropriate." *Compania Naviera Joanna, SA v. Koninklijke Boskalis Westminster NV,* 569 F.3d 189, 202 (4th Cir. 2009) (citing *Kontoulas v. A.H. Robins Co.,* 745 F.2d 312, 315 (4th Cir. 1984)). There is, however, a recognized exception to this rule. An alternative forum will be considered available in instances where a plaintiff makes a tactical decision not to litigate in the alternative forum. *See id.* ("A party should not be allowed to assert the unavailability of an alternative forum when the unavailability is a product of its own

purposeful conduct.") (quotation and bracketing omitted); *see also Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1248 n.10 (5th Cir. 1983) (holding that a court is permitted to disregard a statute of limitation bar where "the plaintiff's plight is of his own making—for instance, if the alternative forum was no longer available at the time of dismissal as a result of the deliberate choice of an inconvenient forum"); *Castillo v. Shipping Corp. of India*, 606 F. Supp. 497, 504 (S.D.N.Y. 1985) ("It would be a strange world if a litigant could "bootstrap" himself into a New York court by missing the statute of limitations in the proper forum.").

This exception to the rule clearly applies in this case. Although it is not clear whether the Plaintiffs' claims would be barred in Pakistan based on Marriott's proffered waiver, the fact remains that the Plaintiffs decided not to litigate in Pakistan "presumably based on [their] assessment that [they are] unlikely to benefit substantially in doing so—and accordingly [have] deliberately allowed any deadline for filing claims there to pass." *Compania Naviera*, 569 F.3d at 202-03. A plaintiff should not be permitted to allow the statute of limitations to run in a forum that has jurisdiction over the parties and most of the witnesses in order to bring a claim in an inconvenient forum. If courts were to condone this action, defendants would be forced to defend themselves in inconvenient forums with longer statutes of limitations based on strategic decisions made by plaintiffs to avoid a particular forum. Thus, Pakistan is an available, alternative forum.

### b. Adequacy of the Foreign Forum

A foreign forum is adequate if two conditions are met: (1) all parties must be able to come within that forum's jurisdiction and (2) all parties must "not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Tang*, 656 F.3d at 248. "[C]ourts generally agree that only the most perilous

obstacles to conducting litigation, evidenced by a complete absence of due process in the alternative forum, will render the alternative forum inadequate." *Tang*, 2010 WL 1375373, at \*4 (citations and alterations omitted).

Marriott argues that Pakistan is an adequate forum. It attaches an affidavit of Ahsan Zahir Rizvi, the Senior and Managing Partner of a Pakistani law firm, which discusses the Pakistani legal system, the claims that the Plaintiffs could bring, and the ability of the Plaintiffs to recover damages and enforce their judgment. He maintains that the Islamabad High Court of Pakistan offers a clear process and remedy for resolving this dispute. Doc. No. 23, Ex. D ¶ 5. He claims that Pakistan recognizes tort liability under the Fatal Accidents Act of 1885. *Id.* Any claim brought in excess of Rs. 2,500,000 ($30,000) will be assigned to the Islamabad High Court. *Id*. ¶ 6. He contends that Pakistan's legal system is capable of enforcing a judgment if Plaintiffs ultimately prevail. *Id.* Finally, he maintains that "Plaintiffs do not have to appear in court and may do all filings through their attorneys. Accordingly, if this case were tried in Pakistan, there would be no need for the Plaintiffs to actually travel to Pakistan." *Id.* ¶ 8.

Plaintiffs argue that the alternative forum is inadequate because "the emotional trauma and fear for their safety that will undoubtedly arise if they are forced [to] litigate this matter in Pakistan is immeasurable." Doc. No. 29 at 9. In support of this contention, the Plaintiffs attach multiple declarations stating that they have an "extreme fear" of traveling to Pakistan. *Id.*, Ex. D. Plaintiffs maintain that they "would not travel to Pakistan for any purpose, including but not limited to hiring the appropriate lawyer to handle the case or attending the trial in the matter." *Id.* Plaintiffs also attached Department of State travel warnings from 2011, Ex. E, which indicate that it may be unsafe to travel to Pakistan because terrorist groups continue to seek opportunities

to attack locations where United States citizens and Westerners are known to congregate.[4]

Additionally, Plaintiffs indicate that according to the South Asia Terrorism Portal 2,428 civilians were killed in Pakistan in 2011 due to terrorism related violence. Ex. G.

The issue of fear of violence creating an inadequate forum appears to be an issue of first impression in the Fourth Circuit. The Second Circuit, however, has considered emotional stress and fear of physical harm as factors to consider in a *forum non conveniens* analysis. *See, e.g.*, *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, (2d Cir. 2000) ("[T]he emotional burden on Plaintiffs of returning to the country where they or their loved ones were shot in an act of religious terrorism provide additional weight for favoring Plaintiffs' choice of their home forum for this litigation."); *Rasoulzadeh v. Assoc. Press*, 574 F. Supp. 854, 861 (S.D.N.Y. 1983) (denying a motion to dismiss for *forum non conveniens* because the court found that plaintiffs would likely be shot if they brought their claim in Iran); *aff'd* 767 F.2d 908 (2d Cir. 1985).

Nevertheless, the burden of proving an adequate forum is low, and the Fourth Circuit has never found that a fear of violence in a foreign country alone creates an inadequate forum. The Fourth Circuit has held that it is rare that "'the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied.'" *Tang*, 656 F.3d at 249 (citing *Piper Aircraft*, 454 U.S. at 254); *see also Tang*, 2010 WL 1375373, at *4 (finding that a forum is inadequate only if there are "perilous" obstacles such as a complete absence of due process). Mr. Rizvi indicates that these factors are not present here. Plaintiffs have a cause of action in tort that they can bring in a Pakistani court. He claims that they will be able to enforce their judgment if they are successful on the merits.

---

[4] The State Department issued an updated travel warning regarding Pakistan on February 2, 2012, which contains the same warnings regarding violence and intolerance towards Westerners. *See* http://travel.state.gov/travel/cis_pa_tw/tw/tw_5661.html (last visited April 17, 2012).

Finally, if this case were tried in Pakistan, there would be no need for the Plaintiffs to actually travel to Pakistan. Doc. No. 23, Ex. D.

Additionally, neither *Guidi* nor *Rasoulzadeh* found that a fear of violence was dispositive in deciding that an alternative forum was inadequate, but rather it was one factor that a court should consider. Therefore, while the Plaintiffs have expressed a real fear of traveling to Pakistan because of what happened to their loved one and the current threat of violence, this factor is not outcome determinative. Thus, this Court must weigh the private and public interest factors.

### c. Private Interest Factors

Marriott argues that all private interests that the Court must consider weigh in its favor and necessitate dismissal of this case. Doc. No. 23 at 10-16. Plaintiffs maintain that there is "no evidence to support, nor has [Marriott] alleged, that Plaintiffs have chosen this forum in order to harass" Marriott. Doc. No. 29 at 14. Plaintiffs maintain that the private interests support maintaining the litigation in Maryland. Marriott's argument is more persuasive.

### i. Ease of Access to Sources of Proof

Marriott alleges that "[a]ll material sources of proof in this case are located in Islamabad, Pakistan." Doc. No. 23 at 10. It relies on *Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328 (S.D.N.Y. 2008) for the proposition that this factor weighs heavily in favor of dismissal. Plaintiffs respond that "[w]hile relevant documents might exist in Pakistan, substantially similar documents certainly exist within the control of [Marriott]." Doc. No. 29 at 15. Plaintiffs contend that the Marriott can obtain any information that it needs to proceed to trial in the United States.

"In weighing the ease of access to evidence, the Court focuses on the specific evidence relevant to the precise issues that are likely to be actually tried." *Niv*, 710 F. Supp. 2d at 339. Marriott contends that all relevant and necessary sources of proof that give rise to the incident require investigating the actions of security personnel when confronted by the terrorist attack. Marriott maintains that the following types of witnesses are required: "police officers, hotel security, hotel employees, local engineers, and the hotel manager" all of whom are located in Pakistan. Doc. No. 23 at 11. Additionally, "[c]ritical evidence pertaining to this terror attack includes the official investigation documents from the ISI, Federal Intelligence Agency, Intelligence Bureau, and Islamabad police." *Id.*; Ex. D ¶ 9. Marriott maintains that "[a]dditional sources of proof include: (1) the incident scene itself, (2) the location of the anti-terror perimeter barrier that stopped the truck, (3) statements by Pakistani employees, managers, and security personnel of the hotel, (4) Pakistani government documents relating to the standard of care for security in Pakistani hotels, and (5) records related to security protocol and training at the hotel." *Id.* at 12. Marriott contends that among other issues, the Plaintiffs need to "obtain discovery from hotel personnel, local architects[,] and contractors responsible for anti-terror measures to determine" whether the facility complied with local ordinances. *Id.* at 13. These witnesses and information are found almost exclusively in Pakistan.

Plaintiffs' argument that "[t]he majority of the critical witnesses and documentary evidence is located in or can easily be produced in the United States" appears incorrect. Doc. No. 29 at 17. Plaintiffs argue that (1) Mr. Orlob, leader of the hotel's security team is located in the United States and has knowledge of the events at issue; (2) CCTV video of the bombing can be found on youtube; (3) aerial photographs or other demonstrative evidence allow for inspection

of the hotel; and (4) security members present during the day of the bombing are now dead. *Id.* at 15-16.

Although Marriott likely overstates its case that *all* material sources of proof are overseas, this factor weighs heavily in its favor. The specific evidence relevant to the issues that need to be tried, including actions of the local security company, hotel and barrier construction, and oversight by hotel employees who were not hired by Marriott, are located in Pakistan and are essential to the issue of negligence and any third-party claims.

### ii. Other Private Interest Factors

Marriott maintains that the majority of witnesses reside in Pakistan, and the Pakistani courts will not assist this Court in compelling witnesses to appear in Maryland to testify. Doc. No. 23 Ex. D ¶ 17. It contends that the cost of producing willing witnesses for depositions and trial would be "overwhelming and unduly burdensome, if not impossible." Doc. No. 23 at 15. Marriott indicates that most of the material witnesses speak only Urdu and translation services would be costly. *Id.* Marriott also contends that it plans to implead third-party defendants who are individuals or companies located in Pakistan.

Plaintiffs argue that Marriott fails to allege that witnesses would be unavailable or unwilling to testify and that translation costs are overstated because a majority of the witnesses and information necessary for trial are located in Maryland. Plaintiffs maintain that Marriott has failed to demonstrate how it will be prejudiced by not bringing the third-party claim simultaneously with Plaintiffs' claim.

In *Tang*, Chief Judge Deborah Chasanow found that the private interest factors weighed in favor of an alternative Chinese forum in a situation largely analogous to this one. A group of plaintiffs brought a products liability action in this Court against a group of Chinese dairy

companies responsible for the production of tainted milk. Judge Chasanow found that the

private interest factors supported the conclusion that China was a more appropriate forum,

because

> the Chinese forum would have the power to compel the testimony
> of unwilling witnesses and the cost of producing willing witnesses
> would be significantly reduced there. The present forum, by
> contrast, could not compel the testimony of Chinese witnesses and
> would pose substantial expense and inconvenience. Many of the
> witnesses would speak only Chinese and much of the documentary
> evidence would be written in that language, thereby necessitating
> translation of not only all the documentary evidence but also the
> testimony of most witnesses from Chinese to English if the suit
> were to proceed here. Furthermore, Defendants assert a desire to
> implead allegedly responsible Chinese third parties that would be
> beyond the jurisdiction of this Court. While Defendants could
> bring indemnification or contribution claims in China if Plaintiffs
> were successful in the litigation here, proceeding in that manner
> would be unduly burdensome and inefficient here.

*Tang*, 2010 WL 1375373, at *12. Similar reasons exist here to find that the other private interest

factors favor Marriott.

Here, Marriott has demonstrated that the private interests weigh in its favor. This Court

lacks the power to compel testimony of unwilling Pakistani witnesses. Many of the witnesses

that Marriott indicates it will call speak Urdu and translation costs for the witnesses and

documents from Urdu to English will be expensive. Although Marriott could bring its

indemnification claim in Pakistan if Plaintiffs are successful here, proceeding in that manner

would be unduly burdensome and inefficient. Although Plaintiffs contend that a majority of the

testimony and documentation is in English and could be located at Marriott's headquarters, they

appear to ignore Marriott's position. Marriott contends that discovery will necessarily involve

hotel employees located in Pakistan who are not employed by it, government employees,

military personnel, local contractors charged with security at the hotel, and hotel patrons who

survived the bombing. Plaintiffs oversimplify their case into one where they need only to depose corporate officials in Maryland and obtain documentation concerning Marriott's security policies, when that simply is not the case.

### d. Public Interest Factors

Each party contends that the public interests weigh in its or their favor. On balance, a majority of these factors favors Marriott.

### i. Administrative difficulties flowing from court congestion

The administrative requirements for this action would not likely overburden this Court. This district ranks thirty-fourth among all district courts in the total number of civil filings per judgeship. *See* Doc. No. 23 Ex. F. There is nothing to indicate that this Court could not manage an additional case.

### ii. Local interest in having localized controversies decided at home

Marriott contends that Pakistan has a substantial interest in having a controversy arising out of a terrorist attack in Islamabad decided by its own judicial system. Doc. No. 23 at 17-18. Plaintiffs argue that the local interest of Pakistan is "sharply outweighed" by the local interests of Maryland. Doc. No. 29 at 22-23. They maintain that this interest arises out of the United States' interest in protecting its citizens. Marriott's argument is more persuasive.

Plaintiffs' Amended Complaint alleges that the terrorist incident in this case has been referred to as "Pakistan's 9/11." *See* Am. Compl. ¶ 25. According to the BBC news, the attack killed 56 people from around the world, injured at least 266, and involved the largest amount of explosives used in a terrorist strike in Islamabad. *See* Doc. No. 23 Ex. C. The attack occurred near the Pakistani Parliament building and the Prime Minister's home. Reports indicate that the

attack was meant to harm Pakistani leadership, including the Prime Minister, who had planned to meet in the hotel. *See id.* Ex. E at 4-5.

Although Plaintiffs are correct that a United States District Court has an interest in protecting the rights and safety of American citizens, these interests are outweighed by Pakistan's interests in this matter. Pakistan has a strong interest in providing safety and security for its citizens and those individuals who visit the country. It also has an interest in determining liability against anyone responsible for Mr. DiFederico's death, the death of fifty-five other people, and the attempted attack on government officials. Pakistan, and not this Court, appears to have a greater interest in resolving the worst terrorist attack in its history through its own judicial process.

### iii. Interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action

Marriott argues that the trial of a diversity case that arose in Pakistan should occur in Pakistan because courts there are familiar with the foreign law that governs this case. Doc. No. 23 at 19-20. Plaintiffs maintain that while proof of foreign law may be a burden in this case, it alone is not enough to push the balance of convenience in its favor.

Plaintiffs' are correct that proof of foreign law is not a per se reason for tipping the balance of convenience in Marriott's favor. *See Millennium Inorganic*, 686 F. Supp. 2d at 563 (finding that the fact that the court would need to interpret Australian law alone was insufficient to support dismissal where the legal issues were straight forward). However, this Court's unfamiliarity with Pakistani law supports Marriott's argument that Pakistan is a more appropriate forum for this matter.

Here, the Court would have to interpret legal principles of Pakistan in light of the judgments and precedent of the High Courts of Islamabad and all the provinces of Pakistan and

15

the Supreme Court of Pakistan. Doc. No. 23 Ex. D ¶ 18. It is likely that the Court would need to have a foreign law expert available, which supports dismissing this case to allow a court more familiar with the law that must be applied to adjudicate this matter.

### iv. Avoidance of unnecessary problems in conflict of laws, or in the application of foreign law

When determining whose substantive law applies to diversity claims, a district court applies the conflict of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Since the Court is located in Maryland, Maryland's conflict of law rules apply. Maryland adheres to the *lex loci delicti* rule in analyzing choice of law issues with respect to causes of action arising in tort. *See Philip Morris Inc. v. Angeletti*, 358 Md. 689, 752 (2000). "*Lexi loci delicti* dictates that when an accident occurs in another state, substantive rights of the parties, even though they are domiciled in Maryland, are to be determined by the law of the state in which the alleged tort took place." *Id*. (quotation omitted); *see also Baker v. Booz Allen Hamilton*, 358 F. App'x 476, 480-81 (4th Cir. Dec. 28, 2009) (finding that Kyrgyz law applied to a negligence claim arising out of an alleged sexual assault that occurred in Kyrgyzstan, provided that requirements of federal procedural rules governing determination of foreign law were met).

Here, the alleged tort occurred in Pakistan where the terrorist bombing killed and wounded individuals at the hotel. Even if the Plaintiffs intend to argue that the training or security recommendations came from Marriott's headquarters in Maryland, under Maryland's *lex loci delicti* rule, Pakistani law would apply to this action. Marriott correctly notes that the Court "will be faced with the daunting, burdensome task of applying Pakistani law." Doc. No. 23 at 21. Plaintiffs respond that the Court is capable of interpreting Pakistani law and that there would

be no language barrier to understanding Pakistani law because one of Pakistan's official languages is English.

On balance, this factor weighs heavily in Marriott's favor. This Court will need to apply Pakistani law which will involve interpreting (1) decisions from Islamabad's High Court and Pakistan Supreme Court, (2) Pakistani statutes including the Fatal Accidents Act of 1855 and Pakistani Hotels and Restaurants Act of 1976, and (3) local ordinances. This Court has no experience with Pakistani law, and it would be more practical and economical for Pakistani courts to handle this matter. *See Tang*, 2010 WL 1375373, at * 13 (finding that the court "would be substantially burdened with attempting to untangle problems in conflict of laws, and in law foreign to itself, while the same concerns would not be presented in China") (quotation omitted).

### v. Unfairness of burdening citizens of an unrelated forum with jury duty

Marriott argues that "imposing jury service on the citizens of this forum for a dispute involving an international company for injuries inflicted abroad is unwarranted." Doc. No. 23 at 22-23. Plaintiffs respond that "Maryland has a connection to both Plaintiffs and the Defendant. Plaintiffs are United States citizens and Marriot's headquarters is located in Maryland." Doc. No. 29 at 24.

Plaintiffs rely on *Mercier v. Sheraton Int'l Inc.*, 935 F.2d 419 (1st Cir. 1991) to support their argument that this case is related to the District of Maryland. In *Mercier*, the First Circuit reversed the district court's determination that Turkey was a more suitable forum for a contract dispute arising between the parties, an American citizen and an American company. The court found that that the defendant failed to satisfy its burden that an adequate alternative forum existed because defendant failed "to state expressly that Turkish law recognizes claims for breach of contract and tortious interference with contract—or some analogous action." *Id.* at

425.  The court went on to discuss private and public interest factors and found that the parties'

citizenship and relationship to the United States were factors that related the matter to the United

States.  *Id.* at 430.  The court concluded that imposing jury duty in the case would "at least

broadly serve the goal of limiting jury duty to a community with an interest in the litigation."  *Id.*

Plaintiffs' reliance on *Mercier* appears misplaced.  *Mercier* involved a lawsuit arising out

of a contract dispute between parties that resided in the United States.  Here, however, that local

character is lacking.  Plaintiffs are suing Marriott in a tort action for events occurring at a

Pakistani hotel owned and operated by a franchisee of Marriott and over whose security

procedures it maintains little control.  It would be burdensome to have members of a jury hear

evidence regarding a terrorist attack that has little to do with this forum other than the fact that

Marriott's headquarters is in Maryland.

On balance, the public factors weigh in Marriott's favor.  Adjudicating the Plaintiffs'

claims here involves (1) the Court deciding tort liability for one of Islamabad's worst terrorist

attacks which would require the application of Pakistani law, (2) the burden of resolving

complex issues in conflicts of laws, and (3) the unfairness to the citizens of this forum to sit on a

jury for events rising out of a terrorist attack in a foreign county.  Even though this case would

not likely present administrative burdens arising from the Court's congestion, and one could

argue that citizens of this forum would not be burdened by sitting as a jury in this case, the Court

finds that the public interest factors weigh in Marriott's favor.

## IV.     Conclusion

The burden on Marriott in defending this case in Maryland is heavy, and the Plaintiffs'

choice of forum is sufficiently inconvenient to warrant dismissal.  If the case were to proceed

here, Marriott would have to defend against claims arising from alleged acts or omissions by

third parties in a distant foreign country. The case would likely require the testimony of Pakistani citizens, which this Court cannot compel to appear before it; a majority of the sources of proof are in Pakistan; and Marriott's inability to implead third parties would prejudice it by not having before the jury those independent entities tasked with securing the hotel. Although the Court is cognizant of the terrible attack and the tragic loss suffered by Plaintiffs, Pakistan is the proper forum for adjudicating this matter.

For the foregoing reasons, Marriott's motion to dismiss will be granted. A separate order follows.

April 25, 2012                                          /s/
Date                                          Roger W. Titus
                                          United States District Judge